Moncure, P.,
delivered the opinion of the court.
This is a supersedeas to a judgment of the Circuit court of Boanoke county, rendered in an action of debt, wherein Henry H. Brillhart, adm’r of Catharine Miller, dec’d, was plaintiff, and Charles T. Barnett and Giles Barnett were defendants. The action was brought upon a bond of the defendants to the plaintiffs’ intestate for the sum of $800, dated the 20th day of September, 1862, and payable one day after date. The only plea in the ease was payment, on which issue was joined, though the defendants filed an account of set-offs. The parties, by consent entered of record, waived the right to have a jury; aud thereupon the whole matter of law and fact was heard and determined, and judgment given by the court, “ that the plaintiff recover against the defendants. $740, part of the debt in the declaration mentioned, (it appearing that the contract as to $100 of the bond of $800 on which this action is founded, was, according to the true understanding and agreement of the parties, entered into with reference to Confederate States Treasury notes as a standard of value, and that the true value thereof at the time the said bond became due was $40,) *555 with interest to be computed thereon after the rate of six per centum, per annum from the 10th day of March, 1869, until payment, and his costs,” &c. The defendants moved the court to set aside the said judgment and grant him a new trial; which motion was overruled; and they excepted to the opinion of the court. The bill of exceptions sets out all the evidence givén upon the trial. It states that the plaintiff, to sustain the issue on his part, introduced and read as evidence the bond aforesaid and the endorsements thereon, which are set out in haee verba. The substance of the bond has been already stated. The endorsements upon it are as follows :
“ The within bond shall not bear interest until called for. Feb. 20th, 1861.
“ Interest from this date, July 29th, 1867.
“ Received interest on the within bond up to this date. Feb. 20th, 1864.
“ Received the interest on the within bond to this date. March 10th, 1869.”
The bill then states, that the “ defendants, to sustain their views of the cause and the issue on their behalf, introduced a wdtness, Giles Barnett, one of the obligors in said bond, who testified that the money that Charles T. Barnett got was Confederate money; that he, Giles Barnett, owed Mrs. Catharine Miller between 5 and $700 for money borrowed before the war, for which she held his bond or bonds; that in September, 1862, he went to her, and offered to pay her the amount he owed her in Confederate money, which she refused to receive, stating that she was willing to receive the interest, but would not take the principal of the money. She did not say whether she refused because she did not want the money, or because it was Confederate money; That Charles T. Barnett said he wanted money, and Giles Barnett said, *556 if ghe would let Charles have the money and give up his bond, he would go Charles’ security; that she then let have enough Confederate money to make the amount up to $800; and then they executed to her the ^ond in suit. He does not remember whether any thing was said about the bond being paid in Confederate money, at the time it was given. "When Charles T. *■> Barnett and witness gave their bond to Mrs. Miller, she then gave up the bonds of witness; that he let Charles T. Barnett have the amount of money he owed Mrs. Miller in Confederate money; but whether he paid Charles the money in Mrs. Miller’s presence, or at another time, he does not recollect. What he borrowed from Mrs. Miller was $500 at one time, to pay for negroes he had bought, and at another time he borrowed from her $200, That Charles T. Barnett went in 1861 and offered to pay Mrs. Miller the amount he owed her in Confederate money, but she refused to receive the principal amount of the debt, but received the interest, and she agreed that he could keep the money without paying interest until further demand by her; that in March, 1869, the witness paid Mrs. Miller, with money that Charles had given him for the purpose, $77.33 in green-backs, as the amount of interest then due her; that at the time of the execution of the bond aforesaid of $800, nothiug was said as to the kind of currency in which it was to be paid, but witness expected it to be paid in Confederate States treasury notes. The defendants also filed as a set-off, an account of $77.33, paid by Charles T. Barnett, in United States currency on the -day of March, 1869, as interest on the said bond; which payment was proved as before stated. The defendants also offered in evidence a scale showing the value of Confederate States treasury notes in gold at different times during the war, which scale was set out *557 in the cei’tificate of the evidence. And this being all the evidence, the court gave judgment for the plaintiff as aforesaid. To this judgment the defendants applied to a judge of this court for a supersedeas, which was accordingly awarded.
The only assignment of error in this case is, that the court erred in deciding that the bond whereon the action was founded, was entered into by the parties thereto in reference to Confederate States treasury notes as a standard of value, only as to $100, part of the sum of $800 for which said bond was given, instead of deciding that the said bond, as to its entire amount of $800, was so entered into in reference to such standard of value, and scaling the same accordingly.
Ve think there is no error in the judgment of the Circuit court. The debt for which the bond was given whereon the action was founded, was an ante-war debt, solvibie only in constitutional currency, except one hundred dollars, which ivas loaned at the time in Confederate money, and was accordingly scaled by the court. The residue of the debt, seven hundred dollars, being the amount of the bond of Giles Barnett, was properly held not to be a Confederate money debt, and not scaled by the court. The grounds on which the plaintiffs in error contend that the whole debt is a Confederate money debt, are: that a new bond was taken during the war fcr the whole amount of the debt, including one hundred dollars loaned in Confederate money at the time : that the new bond was executed by two obligors, to wit: Charles T. Barnett and Giles Barnett, whereas the old bond was executed only by one, to wit, Giles Barnett; that when the new bond was executed, the old one was surrendered; that Giles Barnett was the only debtor for the original debt, whereas Charles T. Barnett was the principal debtor and Giles Barnett only a surety *558 for the new debt: and that while Giles .Barnett orieinally owed a specie debt, yet Charles T. Barnett received Confederate money only as the consideration of the bond executed by him as principal and Giles Barnett as surety* The plaintiffs in error, therefore, contend that there was a novation of the debt, and that while the old debt was a good money debt, the new debt was a Confederate money debt, and consequently scalable.
We think this reasoning, though perhaps plausible, is yet fallacious ; and there seems to be more reason for arguing, that the whole new debt partook of the original nature of seven-eighths of it, than that it partook of the nature of only one-eighth of it. But we think there is still more reason in the j udgment of the court which decided that the nature of the new debt, in its constituent parts, followed that of the consideration respectively, and that seven-eighths of the debt was still a good money debt, solvible by payment in full in good money only, while one-eighth of it was still a Confederate money debt, and therefore scalable.
In September 1862 Giles Barnett, owing a good money debt of $700 to Mrs. Catharine Miller, offered to pay her the amount in Confederate money, which she refused to receive, stating that she was willing to receive the interest, but would not take the principal of the money. She did not say whether she refused because she did not want the money, or because it was Confederate money. But it is obvious that she refused because it was Confederate money. At that time the value of Confederate money, compared with gold, was as $2,50 to $1; and it is not reasonable to suppose that she would be willing to receive less than cne-half of the value of her debt in full discharge of it. It does not appear that she was in want of money at all, much less of Confederate money; or that her debt was not perfectly secure. *559 "Why then should she be willing to receive payment in so depreciated a medium ? She made the new arrangement purely to accommodate her debtor and his brother. Her original debtor still remained liable to her for his debt, though his position as principal was changed to that of surety. lie as much owed the debt under the new bond, as he had owed it under the old. Her condition was not bettered by the change, unless it was by obtaining the additional obligation of another party. But it does not appear, as has already been said, that the original debt ivas not perfectly secured; and it is obvious that to accommodate Giles Barnett and his brother, and not to obtain additional security of the debt, was the only object of Mrs. Miller in making the new arrangement. If the new bond was to be paid in Confederate money, then the security of the debt could not have been the object of the new arrangement, because about the time 'of making it Giles Barnett offered to pay to Mrs. Miller the amount of his debt in Confederate money, which she refused to receive. Giles Barnett does not recollect whether he paid the money to his brother Charles, in Mrs. Miller’s presence, or not; and it does not appear' that she knew whether it was paid in Confederate money or not. But the fact is wholly immaterial. Giles Barnett proves that nothing was said as to the kind of currency in which the debt was to be paid, but he expected it to be paid in Confederate States treasury notes. Such expectation is not enough to make the debt so payable; but it is necessary that it should be the true understanding and agreement of the parties that the debt should be so payable. Whatever may have been Giles Barrett’s expectation, it was certainly not Mrs. Miller’s, that the debt should be so payable; and such was not, therefore, the true understanding and agreement of the parties. That it was not, is confirmed *560 by what transpired afterwards between them. In March 1869 Giles Barnett paid Mrs. Miller with money that Charles had given him for the purpose, $77.33 in greenbacks, as the amount of interest then due her.
The certificate in this case is only of the testimony and not of the facts proved on the trial, and the only testimony was that of Giles Barnett, one of the debtors, and the original debtor. That testimony fairly construed, without any bearing either way, conducts us to the conclusion which we have expressed. But it must be remembered that the case comes up to us, not merely upon the testimony of a single witness, and he one of the debtors, but also as an appeal from the judgment of the court below, to whose decision the whole matter of law and evidence was submitted by the parties: That such a caséis to be considered by this court as upon a demurrer to evidence by the appellant, is now the settled doctrine of the court. So considering this case, can there be a donbt of the correctness of the opinion we now pronounce?
After we had considered this case (which we understood was submitted to the court by consent of parties by counsel) and had prepared the foregoing opinion on it, we received the brief of the counsel of the plaintiffs in error and have considered it. Though ingenious, it fails to show that there is error in the judgment, and does not render any addition to, or change in, the foregoing opinion necessary.
We think there is no error in the judgment, and that it ought to be affirmed.
Judgment aeeirmed.